Hearing this honorable fellow reporter of the 2nd district is back in session. Pursuant to adjournment, the Honorable Michael J. Burke presides. Please be seated. Your Honor, the second case in the morning, called 212-712, the Chief of State of Illinois v. Marcus Reddick. On behalf of the appellant, Mr. Fletcher P. Hamill. On behalf of the FOE, Mr. Gary W. James. Thank you, Mr. Hamill. You may proceed. Good morning, Your Honors. Good morning. Counsel, my name is Fletcher Hamill. And I represent the defendant appellant, Marcus Reddick. Your Honors, there are three issues that were raised in the briefs in this case. First, whether the defendant's motion to suppress was properly denied. Second, whether the judge erred in allowing the state to introduce prior out-of-court statements from the complainant as spontaneous declarations. And third, whether the defendant's sentencing order properly reflects his term of mandatory supervised release. They agreed that that was the correct phrase. That's correct. The state has conceded the third issue, so I'll be focusing my comments on the first two. As to the first issue, the defendant made four statements in this case in between September 16th and September 17th, 2009. The first statement was unquestionably taken outside of Miranda in violation of Miranda v. Arizona. The admissibility of that statement, the judge correctly ruled that that statement was inadmissible. It's the admissibility of the fourth statement, which was taken 24 hours later on September 17th, that's that issue in this case. Did your client and the trial court contest whether there was a knowing involuntary waiver of Miranda before the second statement? Before the second statement? Right, when the Mirandas were initially given. Well, actually, the only time Mirandas were potentially given. I guess there was a question about the second statement. Correct. I believe he did. I mean, he contested the involuntariness of the statements in general. I believe he did. No, but specifically, did he say, I didn't get Miranda, I didn't get proper Miranda, I didn't understand my Miranda? Was that an issue in the trial court at all? I don't think so. I think the issue was, as it is here, were those Miranda warnings, did those Miranda warnings cure the prior violation that Officer Jones committed? So this case falls under the holdings of Missouri v. Siebert and Peeble v. Lopez. And under Lopez, our Supreme Court adopted a two-pronged test. First, whether the statements are, or whether the Miranda violation was deliberate. And second, if so, whether appropriate curative measures were taken in between the Miranda violation and the subsequent statement. I mean, the general rule, first of all, the general rule under Alfaro and some of the other cases, where you have an unwarned statement, and then later a warned statement. The unwarned statement is a Miranda violation, but it's cured by the warned statement. And the general rule is the warned statement then would be admissible. This Siebert is an exception to that, is it not? That's correct. That's correct. Yeah, or merely, unless you find a deliberate violation of Miranda, then, or merely, it would be admissible. How does this fit into Siebert? How is this a Siebert violation by the definition of what Siebert talks about being a question first, warn later situation? Well, it fits in because the record shows clearly that the violation was, in fact, deliberate in this case. But what did he get, what did Officer Jones get from the defendant? He got a statement, again, he got a written statement covering basically the defendant's entire whereabouts for the entire period around the offense. He got the defendant a complete statement on paper. Exculpatory. It was exculpatory, individually it was exculpatory. But then what happens is Officer Taylor comes in, gives the one set of Miranda warnings, and gets another exculpatory statement, one that contradicts the first exculpatory statement. So what Jones achieved was putting the defendant on paper with one version of events before the second officer came in and started to confront him with the allegations against him. So you're saying just the very fact that he's pinning him down on something is sufficient? Right. That's, yeah, exactly. He's pinning him down, and then they start bringing in the allegations and changing it. Well, Siebert, I'm going to read to you from Siebert. It's the Supreme Court saying that this case tests a police protocol for custodial interrogation that calls for giving no warnings of rights to silence of counsel until interrogation has produced a confession. Although such statements generally have been admissible, has taken the violation of Miranda, the interrogating officer follows it with Miranda warnings and then leads the suspect to cover the same ground a second time. The question here is the admissibility of the repeated statement. Now, tell me how this case fits into that exception as outlined in Siebert. OK. Well, in Siebert, of course, in Siebert, at the time the officer interrogated the defendant in Siebert, it was unclear. Actually, it was under Allstat. It was considered appropriate to deliberately circumvent Miranda and to have this protocol. After Siebert, that's not true anymore. And so you're not going to have, and I think our Supreme Court recognizes in Lopez, you're not going to have an officer testifying, I deliberately did this because of a police protocol. So what the Supreme Court has done, our Supreme Court has done in subsequent, in Lopez and in subsequent cases, has looked at both the subjective testimony by the officer, if they want to admit that there was a protocol or not, and then also look at the objective evidence and determine whether or not the objective evidence supports the inference that there was a deliberate violation. And if you look at the facts of Lopez and the finding of the court, the reason they found the deliberate violation in that case was that the need for Miranda warrants under the circumstances was obvious. It was that the court found that no usable officers in the situation that these officers were in would have known to give Miranda warrants. That was the test. So what you'll find out here, Officer Jones really should have known or had to have known that Miranda warrants were required and nevertheless chose not to give them for whatever reason. But going through the objective factors from Lopez, you know, the completeness of the pre-warning interrogation, the continuity of police personnel, overlapping content, tell me how that shows that this was a deliberate question first or later situation. Well, sure. Well, the completeness of the interrogation, this was a complete interrogation. It was, it was an hour long and- We're talking about the interrogation by Jones. By Jones. Jones talked to him for an hour. Well, that's the maximum. It was between 45 minutes and an hour. Right. Well, if you take the, if you take the time that he says he entered the room, the time the defendant signed the written statement, it was an hour of space. And that includes the time it took the defendant to write the statement. Yeah, that'd be true. But that'll count. I think that's part of the process. And, but obviously, even 30 minutes, even if it was 30 minutes, that's a long time. And it's a much longer than, hey, what are you doing here? Oh, I got picked up. So we, and also we can see from the statement itself, it covers the whole time. And the fact that it's a shorter statement than the subsequent statements really has more to do with the content of the statement than it does with its completeness. It's just the fact that the defendant's original story was, was simple. And, you know, I didn't see her at all. So you have the, you have the original statement, the court granted the defense motion. So the original statement wasn't going to come in. Correct. Then you go to the second statement where Officer Taylor comes in and he advises him of his Miranda rights, correct? That's correct. So you get the second statement, the third statement. So those two statements, do you have an issue with those two statements? Well, the judge ruled those two statements were inadmissible as well. Because the judge found that this was, well, the judge didn't find it as a deliberate violation, but then nevertheless found that the, that the Miranda warnings at 10, 15 a.m. on the 16th were not sufficient curative measures to allow for the second and third statements to be admitted. So the judge found there was something wrong with, with what Jones did and found that Taylor failed to, to cure it. So, but, but getting back to the, the factors in Lopez, the interrogation was complete. There was a change in police personnel, but the defendant was in the same room. It was a, it was an immediate shift. It was, he finished his, we're giving his written statement to Jones. Taylor came in and, and started the interrogation right over again, covering the same ground, same, the same topics, you know, his whereabouts that morning. So. No, tell me if I'm, I'm reading this incorrectly, following the facts incorrectly. They, he gets to the police department, Jones happens to be at the police department. Jones is like, hey, I recognize that kid. I was in the schools. I knew they came from the schools. He goes in and starts to chat with him. In the meantime, they call Mike Taylor, who is the juvenile officer. So he's probably out and about from the way I read it. He's out and about walking in somewhere and they call Taylor. And in the interim, while Taylor is coming in, Jones is in the room chit-chatting with this kid. Correct? And then when Taylor comes in, that's when he comes in and starts questioning him again, not necessarily where Jones left off, but now he's coming into question. Correct? Okay, he's starting over, but. Because he just gets into the department. What Taylor does. But then there's also Sergeant Mullen there. Right. And Sergeant Mullen testified that he's the one who sent Jones in. So, and Jones, you know, he kind of characterized it as a chit-chat, but then it's a chit-chat that lasts for, you know, between 30 minutes and an hour. And he gets a big scoff for his statement. Yeah, he produces a complete statement and then he gets to have him write the statement. And you have to remember at this point, you know, the defendant's been arrested. He's been identified as the perpetrator by the complainant. He's in custody. He's not free to leave. Wait, didn't Jones tell him he was free to leave? I don't think, I don't believe he did. Well, he told him he didn't have to speak to him. Yeah, sure. He may have said that. I don't think, yeah, certainly he was not free to leave. He was under arrest. I mean, there was no question about that. And actually, even if Jones had told him he was free to leave, Jones would have known better. Have you seen any cases in Illinois that have found, or anywhere, that have found the deliberate use of the question first, warn later protocol when the first statement produces not one inculpatory statement? No, I don't think I know of any where the initial statement is exculpatory. However, you do, you have to look at it in context. The first statement is exculpatory all on its own. But then when the second statement comes in, even though that also would be exculpatory and looked at individually, but collectively, they're incriminating. And then you have the third statement, which is, you know, an amendment to the second statement based on Officer Taylor confronting the defendant with more facts. Is there evidence in the record that Taylor went over the first written statement specifically with the defendant as he was going through his interrogation? I don't recall any testimony like that. I do recall that Taylor did go over the statement with Jones before. No, I'm talking about the defendant. I mean, again, we're getting to these objective factors. And did he sit down with that statement with the defendant and say, okay, now here in your statement to Jones, you said this. Now, I mean, is there any evidence in the record that that happened? I don't think so. I don't recall any, that that happened. But he did say he confronted him with the allegations that the complainant made against him. So the defendant- That was the first time that happened, right? That's true. Jones didn't confront him with anything. Not that we know of. Jones just basically said, hey, what'd you do this morning? Where were you? What'd you do? He never confronted him as to why he was there. Well, he asked him why he was there. Or he didn't- No, he asked the defendant, why are you here? Right. But he never told him, you're here under investigation of a sexual assault. That's true. And he basically said, hey, you know, you're going to be better off if you put in writing what you told me where you were. He did tell him that. Yeah, right. So I guess we are assuming, you're assuming that Officer Jones's intentions weren't good. He was trying to tee this kid up for an inconsistent statement down the road, correct? As opposed to perhaps just being a nice guy who he knew this kid from the school and he was trying to help him out and saying, here, put down what you told me. Otherwise, you're going to get in some trouble. You know, the problem here is that Jones absolutely should have known that Miranda Rockmore is a required suspect. He was eliciting statements from the defendant relating to an offense for which the defendant was under arrest. He had to Mirandize him and had to know that. So whether he was being his buddy or if he was setting up, the question is, does he have any support to inference that he was setting it up? And it does. Because if he was his buddy, he wouldn't, he would have known to give him Miranda warnings. If he was his buddy, he would know that it's usually not a good idea for a defendant to talk. One would wonder if the kid said, well, gee, yeah, I was out by the park and I raped this girl. At that point, Jones would have said, yikes, let me give you some Miranda warnings. Well, if he did that, then in this case, it would have been exactly like Lopez. But maybe in light of the fact that the kid gave no incriminating statement, he didn't feel he needed to Mirandize. Well, but the thing is, he has to do it before he ever gives a statement. So he doesn't know if he's going to give him exculpatory or inculpatory statements at the time. But according to Lopez, do you have to give him a statement immediately if you're just starting your investigation before they start to incriminate themselves? Yes, and Lopez does exactly what happens. I mean, in Lopez's case, it's not clear whether the defendant, at first he's a witness and he becomes a suspect as it goes along. And what the Supreme Court held is that the officers should have realized he was a suspect or did realize he was a suspect well before they turned around and gave him Miranda warnings. And that's kind of, that's what we have here. Except there's never any question whether this is a witness or a suspect. He was a suspect from the first moment. So Jones had to know all along that he needed to give him Miranda warnings and did not. I heard my time is up. So let me ask you this. The trial court obviously found Jones to be credible. Correct. To what extent should we defer to his finding? I think, well, you know, the standards manifest way, contrary to the manifest way of the evidence. But here, I think that that finding is contrary to the manifest way of the evidence. So the situation here, anybody, anybody with any background at all would recognize that when you're eliciting statements about, you know, an offense from the suspect in the station after he's been arrested and identified, you Miranda's. And for Jones to say, oh, I didn't think I had to is just incredible. So I think that, Your Honor, while you should utilize a deferential standard here, that that standard's met. And, Your Honor, I would ask that you allow him to present in front of the new trial. Thank you. Thank you, Mr. Hanley. We'll have time for rebuttal. Mr. Jacobs, you may proceed. Good morning. I'm Barry Jacobs on behalf of the Plaintiff Faculty. May it please the court and counsel. Counsel, do you agree that Miranda's had to have been given by Jones? No. So he wasn't in custody at that time? He was in custody at the time. Did you say he was? He was. So he should have given him Miranda's? He should have given him Miranda's if he was going to question him. But what, in fact, happened, and Elstad is applicable in this case, he recognized this defendant from being a safety officer in the schools, said it was his practice that he, when students came through, he would speak to them. And that's, in fact, what he did. The nature of his questioning was not specific. It was very open-ended, basically just asking, what brought you here? Why are you here? But did someone send him in there? He did send him in. Why? That's unclear from the record. Even if he did send him in there, there's still no subjective evidence that there was any collusion. There's no collusion between, I guess he's a supervisor, Mullen, I know his title, Officer Mullen and Jones. And that would require the court, this court, to make a credibility determination, which the lower court already made, and found that Jones didn't possess the savvy to actually try to thwart Miranda. So to find outside the record that there was some collusion is simply not in the record. Was there evidence in the record that Jones knew that this young man was in there because of a sexual assault complaint? Not to my recollection, there was... I don't believe there was any evidence that Officer Jones was apprised of why the defendant was there. That's my recollection. But this case, I would remind the court, is one where there is substantial and overwhelming evidence against the defendant. Substantial what? Substantial and overwhelming evidence against the defendant. Even if the statements to Detective Taylor hadn't been admitted and the victim's statements hadn't been admitted, there's still overwhelming evidence of this defendant's guilt. So what you're saying is even if we reverse that, you can go back and try mistaking... I would say even if you reverse those, it was harmless error in both of those instances. And there's no reasonable probability that a different result would have obtained even if those statements would have been suppressed or not allowed into evidence. Are you conceding that the police deliberately used the question to explore a later protocol? No, there's no evidence of that either. In fact, the court made a specific finding, as I said, but there's no subjective evidence. I guess that's what the finding goes to, that Officer Jones had the savvy to deliberately withhold Miranda. But he's been an officer for 20 years. That's correct. And it's unclear in what capacity, but as I said, there's evidence in the record that he was a safety officer and routinely would go and speak to students he recognized. The Seabrook analysis is interesting in this case because the judge applied part of it and then somewhat confused it. On the one hand, making the finding that there was no evidence of deliberateness and then proceeding to determine whether or not there were curative measures employed. When you look at the objective evidence here, that there was no overlap between Officer Jones, the statement obtained by Officer Jones and the statement later obtained through the second and third and fourth interrogations by Detective Taylor, it's clear that... Well, Taylor was aware of the content of that first statement. He was. In fact, the record is clear that Detective Taylor read the statement before he went into the room. The record is also clear that once Officer Jones finished his interrogation, he left. He wasn't in the room with Detective Taylor and the defendant. He was gone. Is there any evidence, as I asked your opposing counsel, this first statement was gone over with the defendant by Taylor? That's not my recollection. My recollection is very clear that he was not confronted with what he said to Officer Jones by Detective Taylor. Getting back to what I was saying about the inconsistent findings, the court found that there was no evidence of deliberateness. It's the state's position that if you look at the objective factors, that there's no overlap between the personnel, there's no overlap in the statements. Although it's debatable whether or not this is a complete statement, the salient point, I believe, is that Officer Jones never confronted this defendant with specific allegations or statements made by the victim, AS, whereas Detective Taylor did. That was the first thing he did after he gave Miranda warnings. And that was the first time that the defendant was surprised that why he was there? Yes. And he gave the Miranda warnings right before that? Yes. Were those Miranda warnings challenged in the trial court? My recollection is, no, they were not challenged in the trial court. And it's the state's position that it can be argued that all the post-warning statements should have been admitted the 2nd, 3rd, 4th, and 5th. Which were admitted? Pardon? Which ones were admitted? Only the 4th. The last one? The last one. Where there was a gap. And that was the court's rationale for admitting that 4th statement, that there had been a period of time where the defendant was allowed to sleep overnight. And then the questioning resumed the morning of the 17th. Well, separate apart from Siebert, it seems as though the court, not finding deliberateness, found some taint from the first Miranda violation to the close-in-time statements. And then found that that taint was somewhat attenuated by the passage of time. And I believe the court specifically found that Mirandas were given again. The court did the first part of that. The Siebert analysis requires that the court first determine whether or not there was deliberateness. If there's no evidence of deliberateness, the inquiry ends. Therefore, the getting of those Miranda warnings and the statements obtained in the second interview by Detective Taylor should have been sufficient for those statements to be admitted. Because Siebert simply doesn't require it. Once he found there was no deliberateness on the part. So it's unclear why he continued the analysis, Siebert analysis, after he determined that Officer Jones didn't act deliberately. But even if this court finds that there was some sort of question first, warn later technique employed, I think it can also be argued that the second statement, third and fourth, were all obtained after sufficient curative measures were undertaken. And excuse me. I'm not sure if it's more. It is probably more. What are you doing? Yeah, so then his rationale for allowing the fourth statement in was if there was a get a statement first, warn later, then enough time has passed to cure that. Apparently, that was the only before and he felt that Officer Jones did testify as your opponent discreet. Officer Jones testified that he did re-advise him of his Miranda warnings. He was kind of conflictual in what he said. Detective Taylor. Yes. There was some confusion about whether or not he was readmonished. I guess there's also the point that could be made that each time the defendant, with the exception of the first statement that was not on a preprinted form, but the second, third and fourth statements were all written on preprinted form, which laid out each of the Miranda warnings there. Is that sufficient? Do you still need to go over them? Well, I guess that raises the question more like a people the Garcia analysis, whether or not the warnings were so fresh or stale at a later point. It'd be the state's position that 24 hours, I believe, you know, up to 18 hours has been found to be to be okay. The point is that each time he was reminded, even after this first valid warrants in the state's position, he was reminded and he was given a form that actually laid them out and he signed each statement. No, his testimony on direct was that he asked the defendant if he still understood his Miranda rights. And then on cross-examination, he says he advised defendant verbally of his rights from the day before. Give me your take on that. What's your position on that? In my brief, I argued that it was actually he readmonished. It's somewhat unclear whether or not he went through each right. Does he have to go through each right? And as I said, that kind of raises the question of whether or not those first rights with the state main things were valid. First explanation, whether those were stale or not. It's also state's position that they were not stale. The defendant indicated he understood them. Each time he signed those statements. So just referring to him, reminding a defendant and hypothetically, you know, Hey, you remember, I advised you of your rights yesterday. You remember those rights and then going forth. That would be sufficient, correct? Not in all cases, but in this case, yes. I mean, that's a totality. Examines examining the totality of circumstances, and I think that Garcia said that that is appropriate with the courts attempting to determine whether or not these warnings are stale. Is it sufficient to say if we just take it, take at face value his statement on cross-examination officer Taylors that he advised the defendant verbally of his rights from the day before. Is that sufficient? I think in conjunction with the other evidence based on if you're doing a totality of circumstances evaluation based on that and the other evidence, I do think it's sufficient. And then adding in, of course, the fact that the Miranda's, although that's after his oral statement, but when he does get to his written statement, then that the Miranda warnings are pre-printed on the form. Correct. So you previously signed two statements, both of that, each had those Miranda warnings. So he's been reminded that it was reminded verbally and in writing. Yeah. Okay. At least three times. Thank you. Of course, the issue in Griffin wasn't whether the warnings were stale, but whether they were nuggetory. Right. And I mean, that's the, that's the opponent's argument is that they have no effect because of the violation. Well, that's correct. In this case, as I said, the state's position is the court misapplied the analysis after finding there was no deliberate. The inquiry should have stopped and those warnings should have been found that before the second statement, those warnings were sufficient and should have been found to be sufficient. It was only the court's thought that because Officer Jones and Detective Taylor, you know, or Detective Taylor came in so quickly after Officer Jones, that there, there should be some suppression of the second, third statements. But again, looking at the argument can be made, rather, that even though they were close in time, you know, time wasn't the only factor that there was a change in personnel from Jones to Taylor, that there was a different focus of the interview. Of course, the Miranda warnings were given by Detective Taylor and that he was actually confronted with specifics of what A.S. said during that second interview. So all those things should have led a reasonable person, the defendant, to know that circumstances had changed, that the focus of the interview was different, and that he retained a choice after hearing those Miranda warnings to not talk. But in that vein, the state does believe the court misapplied the Siebert analysis. Do you want to touch on that spontaneous declaration with respect to Officer Santiago? The spontaneous declaration, the hearsay exception, the court found, as you know, that the statements, which were only slightly more detailed that A.S. made to Officer Santiago than they were to Tanya Jarrett, I believe, in the ABS, were spontaneous declarations. It's interesting that the defense doesn't challenge that the earlier statements to Tanya Jarrett and Officer Villafuerte, he admits those were spontaneous  and were properly admitted. It seems that the whole argument comes about whether or not A.S. had the opportunity to reflect on her statements. And the only testimony that I recall in the record, that I believe is in the record, is that A.S. talked about feeling like she wouldn't be believed and not wanting the police called. And all this, her opportunity to reflect seemed to occur before she made any statements to anybody while she sat alone in the woods. So it's somewhat inconsistent to say the first two statements made after she had that opportunity are spontaneous. But the later statement, which contained slightly more detail, was not spontaneous. Was she in the same physical condition? She was. Based on the testimony, the statements were all made in rapid succession. She was discovered by Tanya Jarrett, you know, crying, stumbling from the woods, hair a mess, no shirt. And the police were called. Officer Villafuerte responded. He's a male. He spoke to her. He said she was glazed over, didn't want to speak or didn't seem to be capable of speaking. And he asked her, you know, what happened or who did this? She identified the defendant at that point and said, would you be more comfortable with a female officer? Sent her on to the paramedics. Officer Santiago testified that when she arrived, she was making her way to the paramedics. So the timing seems rather, rather short. And she made the statement that with more detail that the defendant had dragged her down into the woods and sexually assaulted her. My time is up. So I would ask that the, as I said, even if these statements were found to be improper, I would ask that the court affirm the defendant's conviction on the idea that they were harmless to the defendant. Thank you, Mr. Jacobs. Thank you. Mr. Hammond, goodbye. I'll start with the second issue. The purpose of spontaneous declarations, these, in this case, spontaneous declarations in this case were prior consistent statements. And prior consistent statements are not typically admissible because they are typically not reliable. And that's inherent in the statements themselves. It has nothing to do with the credibility of the witness or anything else. The only reason that a spontaneous declaration is admissible is because the circumstances of that statement do not allow the declarant the opportunity to reflect. Or fabricate. Yeah, to fabricate. But really, just to reflect. Because it doesn't matter if they do fabricate. It just matters if they had a chance to. So what was the time period, if you know, between the first statement to Jarrett and the third statement to Santiago? It's not entirely clear. It's at least a few minutes. There's, you know, there's sometimes she goes to Jarrett. She gives Jarrett the one sentence statement. The police arrive, I believe, it's relatively quickly. But that's, you know, that's Officer Villafuerte. There's a time for her to give him a brief statement. There's time for paramedics to arrive. She sits down with the paramedics, receives treatment. Officer Santiago arrives and Officer Santiago, according to her testimony, sits with her and calms her down before eliciting her statement. So she's still upset at the time. She's still upset, but she's obviously, you know, by the testimony, she has been  at least some. What you're looking at, what we look at here is both the content and the circumstances where this time, you know, passes and you have A.S.'s testimony where she describes herself reflecting on her credibility. And that's, you know, kind of exactly the kind of thing that if you're able to think about that, then the state that you make after you think about that is just like any other state that you make outside of court. Didn't she think about that before she met Jarrett? When she said, don't call the police? Well, she may have. I mean, obviously, what you're looking at is both that and the content, though. So the content of her statement to Jarrett is one sentence. And it's clear from Jarrett's testimony and from A.S.'s testimony, she was, you know, still very upset then. And so I did, you know, I didn't challenge that statement. I believe, I think there probably is sufficient evidence in the record to show that that statement was spontaneous still. Isn't there plenty of case law that states that there are longer periods between the statement where the court allows spontaneous declaration? In this case, you have minutes and you have a young girl who was allegedly sexually assaulted in the woods. So I guess my question to you would be, is it unreasonable for anyone to feel that she would still be extremely upset within minutes after an alleged rape? Right. Well, there's longer periods and shorter periods that have been found to be not spontaneous. And I'm trying to remember the name of the case, but there was a case that I did in my brief where minutes had passed and I know it was a violent case. I want to say it might have been a murder case that the witness saw, but I'm sure it was a violent case, whatever it was. Do we take into consideration or should the court take into consideration the fact that she was a minor? Yes, I believe so. I mean, everything, I think all the circumstances are to be considered. But what is important here, though, is that she, she, one thing, sexually reflected, and the second thing is the content of the same statements really changed from the first statement to the third statement, where it went from one sentence I was raped to two sentences I was raped by the defendant and I don't want to talk to you, up to what is essentially just as much detail as there was in her testimony. Objectively, though, the fact that she's crying, the fact that she's shaking, the fact that she's trembling, aren't those all objective factors that you could point to to show an absence of premeditation where she's sitting down and thinking through this and so forth? Well, those are all factors, but in the end of the day, though, you have to, she, she says she thought through it and she, and the statement itself reflects that she did think through it. So I think that outweighs the fact that she was shaking and trembling. So, and on topic of harmless error, you know, this, this case is a classic, he said, she said case. It's the defendant's word against A.S.'s word. Well, you have Jarrett, though, who describes this girl coming out of the woods with no shirt on and sticks in her hair and extremely upset. And the first thing she says is I've just been sexually assaulted. It's not just that he said, she said, if you've got, you know, a civilian witness on the street who sees this? Well, this could be, that would still be consistent with the defendant's version of the facts. So I, I didn't know, ultimately it comes down to which, you know, which witness did the, did the jury believe? No, the, the issue on the spontaneous declaration, that's an abuse of discretion. Correct. Now you will agree on the first issue, you would agree that, that the trial court made a finding, although we reviewed this, that finding, holding, I should say, DeNovo, that there, that Jones did not intentionally circumvent Miranda, that there was no deliberateness and the trial court made that finding, correct? Correct, he did. And I didn't believe that that was contrary to my first way of getting it. Well, again, that's really a holding that is DeNovo. I mean, what he, his, his factual determinations about what he, whether he believed Jones or not, you know, that, that, those are factual determinations. But the ultimate holding of deliberateness or lack of deliberateness, I mean, I think we would probably review that DeNovo, I would imagine. That's correct. That's correct. Do you believe it was improper for the court, after finding that Officer Jones did not deliberately fail to give Miranda, do you think it was proper or improper for the court to go on and then evaluate the next two sentences as an extension of, of, of deliberately withholding I don't, I don't think so. It's not consistent. Right. The analysis, if he meant, if he meant that it was not deliberate, then the analysis should have ended there. Should have ended. Correct. And two and three should have come in. Yeah. And the fact that he went, true, true. And I do believe that he ended up finding that he didn't. And there's one thing I did want to really quickly clarify. His only reason those two and three came in was because the defendant, because four came in. And that was the only reason that, that the second, the third one, what he caused in the defendant did oppose those. And the judge did find those were inadmissible. And if you guys don't have any other questions, I would, I think that I am causing any trouble. But we'd like to thank both attorneys for their arguments today. The case will be taken under advisement. We're adjourned.